[Cite as *State v. Johnson*, 2013-Ohio-3218.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 26628 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| JEROME ALLEN JOHNSON | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 12 05 1289 (A) |

DECISION AND JOURNAL ENTRY

Dated: July 24, 2013

BELFANCE, Presiding Judge.

{¶1} Defendant-Appellant Jerome Allen Johnson appeals from his conviction in the Summit County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

{¶2} In May 2012, Mr. Johnson was indicted on one count of trafficking in cocaine in violation of R.C. 2925.03(A)(C)(4), a fifth-degree felony. The matter proceeded to a jury trial and Mr. Johnson was found guilty of the charge. The trial court sentenced Mr. Johnson to 36 months of community control and fined him $500. If Mr. Johnson violated community control, the court indicated that Mr. Johnson could face up to 12 months in prison. Mr. Johnson has appealed, raising a single assignment of error for our review.

II.

ASSIGNMENT OF ERROR

APPELLANT'S CONVICTION FOR TRAFFICKING IN COCAINE WAS BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OF LAW, AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶3}** Mr. Johnson asserts his conviction was based upon insufficient evidence as there was not enough evidence to connect him to the crime. He asserts his conviction is against the manifest weight of the evidence because the testimony of his alleged accomplice, Dontez Trammer, proves that Mr. Johnson did not provide Mr. Trammer with any cocaine. We do not agree.

**Sufficiency of the Evidence**

**{¶4}** "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009–Ohio–6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶5}** Mr. Johnson was found guilty of violating R.C. 2925.03(A)(C)(4) under a complicity theory as an aider or abettor. R.C. 2925.03(A) states that

> [n]o person shall knowingly do any of the following:
>
> (1) Sell or offer to sell a controlled substance;
>
> (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable

cause to believe that the controlled substance is intended for sale or resale by the offender or another person.

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). R.C. 2923.03(A)(2) provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" Whoever violates R.C. 2323.03 "shall be prosecuted and punished as if he were a principal offender." R.C. 2923.03(F). "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "Such criminal intent can be inferred from the presence, companionship, and conduct of the defendant before and after the offense is committed." *In re T.K.,* 109 Ohio St.3d. 512. 2006-Ohio-3056, ¶ 13. However, "the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." (Internal quotations and citation omitted.) *Johnson*, 93 Ohio St.3d at 243.

{¶6} Viewing the evidence in a light most favorable to the State, we conclude there was sufficient evidence whereby a reasonable trier of fact could conclude beyond a reasonable doubt that Mr. Johnson trafficked in cocaine by aiding and abetting Mr. Trammer. On May 4, 2012, around 2:00 p.m., Detective Brian Boss with the Akron Street Narcotics Uniform Detail ("SNUD") was driving around in high-crime areas of Akron with two other individuals in an unmarked vehicle trying to buy narcotics. Detective Boss was driving down Newton Street when he came across Mr. Trammer and asked him if he "had anything[.]" Mr. Trammer told

Detective Boss to pull onto Barder Avenue and he would meet him there. Detective Boss did so, and Mr. Trammer approached the vehicle and asked what Detective Boss wanted. Detective Boss indicated he was looking to buy a "20 piece," which is a $20 rock of crack cocaine. Mr. Trammer told him wait a minute and he would be back. Mr. Trammer walked across the street and out of view. Approximately five minutes later, he returned and was in the company of Mr. Johnson. Mr. Trammer approached the car and told Detective Boss that "'[his] boy [was] going to get the dope at the car wash'" and then Mr. Trammer would bring it to Detective Boss. As Mr. Trammer was saying "[his] boy" he was pointing at Mr. Johnson, who was approximately 50 feet from Mr. Trammer. Detective Boss then relayed this information, as well as a description of the individuals to other undercover detectives in the area.

{¶7} Detective Donny Williams, also with the SNUD, received the radio transmission from Detective Boss, and was parked in an unmarked vehicle in a parking lot next to a convenience store which was across the street from the car wash. Detective Williams estimated he was approximately 50-60 yards from the entrance of the car wash and had a clear, unobstructed view of the front of it. Detective Williams observed an individual matching Mr. Johnson's description walk into the car wash and disappear out of view. Thirty to forty seconds later he walked out of the car wash and met an individual matching Mr. Trammer's description between ten to twenty feet in front of the door of the car wash. Detective Williams testified that he "observed Mr. Johnson, with his right hand, hand Mr. Trammer something. Mr. Trammer looked at it, turned and walked away." While Detective Williams did not see what, if anything, was transferred from Mr. Johnson to Mr. Williams, based upon his experience, it appeared that Mr. Johnson transferred something to Mr. Trammer. Detective Williams reported what he had observed to Detective Boss.

**{¶8}** Mr. Trammer then returned to Detective Boss' vehicle and handed Detective Boss a rock of crack cocaine and Detective Boss handed Mr. Trammer $20. Detective Boss indicated that, based on his experience, the rock was similar in size to other $20 pieces of cocaine. Mr. Trammer and Mr. Johnson were then arrested and the buy money was found on Mr. Trammer. Laboratory analysis later confirmed that the rock contained cocaine.

**{¶9}** Based on the foregoing, we conclude that sufficient circumstantial evidence was presented, if believed, whereby a reasonable trier of fact could conclude that Mr. Johnson trafficked in cocaine by aiding and abetting Mr. Trammer. According to Detective Boss, Mr. Trammer identified Mr. Johnson as the individual that would get cocaine from the car wash. Detective Williams observed Mr. Johnson go into the car wash and come out and then appear to hand something to Mr. Trammer. Mr. Trammer then looked at his hand and proceeded to walk away. In light of the fact that Mr. Trammer looked into his hand after his encounter with Mr. Johnson, a jury could reasonably infer that Mr. Johnson handed something to Mr. Trammer. Further, in light of the fact that Mr. Trammer told Detective Boss earlier that Mr. Johnson was going to get dope from the car wash, a jury could reasonably infer that the substance Mr. Johnson handed Mr. Trammer after having been in the car wash was the cocaine that Mr. Trammer then provided to Detective Boss. Thus, viewing the evidence in a light most favorable to the prosecution, the jury could conclude that Mr. Johnson was more than just an innocent bystander, and, instead, aided Mr. Trammer in the sale of cocaine to Detective Boss. Accordingly, Mr. Johnson's argument is without merit.

**Manifest Weight**

{¶10}  Mr. Johnson also asserts that his conviction is against the manifest weight of the evidence because Mr. Trammer unequivocally testified that he did not get the cocaine from Mr. Johnson.  We do not agree.

{¶11}  In reviewing a challenge to the weight of the evidence, the appellate court

> [m]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶12}   Mr. Johnson is correct that Mr. Trammer did testify on behalf of the defense and repeatedly indicated that he did not obtain any cocaine from Mr. Johnson.  However, there was much about Mr. Trammer's testimony that could have caused the jury to question Mr. Trammer's credibility.

{¶13}  Mr. Trammer's testimony is a bit disjointed and difficult to follow.  Nonetheless, he does repeatedly deny obtaining cocaine from Mr. Johnson.  Instead, Mr. Trammer testified that on May 4, 2012, someone had asked to buy a $20 piece of cocaine.  Mr. Trammer indicated that he was very intoxicated and had consumed four six-packs of beer that day.  Mr. Trammer stated that he remembered he had a small $10 piece of cocaine at home and so he went and retrieved that.  Then Mr. Trammer proceeded to the car wash to see if he could get the phone number of a friend that would have more.  Mr. Trammer passed Mr. Johnson on the way, but Mr. Johnson was on the phone and so Mr. Trammer did not bother him.  Mr. Trammer did get a phone number and a cigarette from the car wash, although neither was found on Mr. Trammer when he was arrested.  While Mr. Trammer testified he did obtain a phone number, Mr.

Trammer did not obtain any more cocaine. He testified that he returned to the vehicle and gave Detective Boss the piece of cocaine he got from his home and Mr. Trammer got $20. He stated that it was too small to be a $20 piece of cocaine and so was going to tell Detective Boss that he only needed to pay $10, but Detective Boss sped off before he had the chance to do so.

**{¶14}** On cross-examination, Mr. Trammer acknowledged that he had a prior felony conviction for theft and also discussed several inconsistencies between his trial testimony and the previous colloquy that took place when Mr. Trammer pleaded guilty to charges related to this incident. Mr. Trammer agreed that, during his plea he stated that he did not know what happened the day of the drug sale or the next day. At the plea hearing, Mr. Trammer admitted he was an alcoholic and that he had seizures. He stated during his plea colloquy that "'I did something dumb that day. The only way I found out I had did it is somebody had told me.'"

**{¶15}** In light of the fact that, at the time of the plea, Mr. Trammer stated that he did not know what had happened on May 4, 2012, the jury could have viewed Mr. Trammer's trial testimony in which Mr. Trammer suddenly seemed to remember the events of that day with skepticism. Essentially, the jury heard conflicting versions of events and was charged with evaluating which version was more credible. We cannot say that the jury lost its way in finding that Detectives Boss' and Williams' version was more credible. Accordingly, after a thorough and independent review of the record, we cannot say that Mr. Johnson's conviction for trafficking in cocaine was against the manifest weight of the evidence. Mr. Johnson's assignment of error is overruled.

III.

**{¶16}** In light of the foregoing, we affirm the judgment of the Summit County Court of Common Pleas.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

CARR, J.
WHITMORE, J.
CONCUR.

APPEARANCES:

JEFFREY N. JAMES, Attorney at Law, or Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.